UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-20864

FENDER MUSICAL INSTRUMENTS CORPORATION,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

    Defendants.

_____/

## **COMPLAINT**

Plaintiff FENDER MUSICAL INSTRUMENTS CORPORATION ("Plaintiff" or "FENDER"), by and through undersigned counsel, hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A**[1] to the Complaint (collectively, "Defendants"):

## **INTRODUCTION**

1. This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's trademarks, which are covered by U.S. Trademark Registration Nos. 4302401; 2438508; 805075; 839997; 1058386; 884159; 1062732; 1058385; 3060024; 6850472; 1148870; 1148869; 4151702; 1999898; 882884; 1998339; and 871794 (collectively, the "FENDER

_____

[1] Plaintiff intends to file a motion to seal the Schedule A.

1

Trademarks").

2.      The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the FENDER Trademarks are attached hereto as **Exhibit 1**.

3.      Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products infringing upon Plaintiff's FENDER Trademarks (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the FENDER Trademarks (the "FENDER Products"), Defendants cause confusion and deception in the marketplace.

4.      Defendants create numerous fully interactive commercial internet stores operating under the online marketplace account identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms, AliExpress, Amazon, DHgate, Ebay, Etsy, Temu, TikTok and Walmart (collectively, the "Marketplace Platforms").

5.      Defendants design the online marketplace accounts to appear to be selling genuine FENDER Products, while selling inferior imitations of such products.

6.      Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the FENDER Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks, and goodwill and, therefore, seeks injunctive and monetary relief.

9. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10. In addition, each Defendant has offered to sell and ship and/or sold and shipped Counterfeit Products into this Judicial District.

## SUBJECT MATTER JURISIDCITON

11. This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

12. Personal jurisdiction exists over Defendants in this Judicial District pursuant to FRCP § 48.193(1)(a)(1) and § 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

13. In addition, Defendants' illegal counterfeiting and infringing actions of the FENDER Trademarks have caused injury to Plaintiff in Florida, particularly in this Judicial

District, such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District.

14.     For example, Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to addresses located in Florida and particularly in this Judicial District. Screen shots of the shopping cart allowing Counterfeit Products from Defendant Internet Stores to be shipped to Florida are attached as Exhibit 2 to the Declaration of Aarash Darroodi ("Darroodi Decl."), which will be filed in Support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order.

15.     Moreover, upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

16.     Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

17.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of trademark infringement in this Judicial District and do substantial business in this Judicial District.

### THE PLAINTIFF

18.     Plaintiff FENDER is a corporation organized and existing under the laws of the United States of America with a principal place of business in Los Angeles, California.

19.     Plaintiff is the registered owner of the FENDER Trademarks (attached as Exhibit 1):

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,302,401 | FENDER | Mar. 12, 2013 |
| 2,438,508 | JAZZMASTER | Mar. 27, 2001 |
| 805,075 | FENDER | Mar. 08, 1966 |
| 839,997 | STRATOCASTER | Dec. 05, 1967 |
| 1,058,386 | TELE | Feb. 08, 1977 |
| 884,159 | PRECISION BASS | Jan. 13, 1970 |
| 1,062,732 | P BASS | Apr. 05, 1977 |
| 1,058,385 | STRAT | Feb. 088, 1977 |
| 3,060,024 | FENDER | Feb. 21, 2006 |
| 6,850,472 | FENDER | Sep. 20, 2022 |

| 1,148,870 | | Mar. 24, 1981 |
|---|---|---|
| 1,148,869 | | Mar. 24, 1981 |
| 4,151,702 | FENDER | May 29, 2012 |
| 1,999,898 | JAGUAR | Sep. 10, 1996 |
| 882,884 | JAZZ BASS | Dec. 23, 1969 |
| 1,998,339 | MUSTANG | Sep. 03, 1996 |
| 871,794 | TELECASTER | Jun. 24, 1969 |

**THE DEFENDENTS**

20.    Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

21.    Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**THE FENDER PRODUCTS**

22.    Plaintiff is the originator of the mass-marketed solid body electric guitar. Plaintiff has created products that have been integral in almost every large scale social and musical

movement since the 1950's. The company has distinguished itself as one of the music industry's biggest musical instrument manufacturers in the world. Through great effort and as a testament to Plaintiff's popularity and quality of its products, Plaintiff has gathered many industry accolades, with recent awards including but not limited to:

    a.  Best Gear of 2023 (Guitar World Magazine) – Squier Paranormal Jazzmaster

    b.  Editor's Choice 5/2023 (Guitar.com) – H.E.R Limited Edition Stratocaster

    c.  Best Gear of 2022 (Guitar World Magazine) – 40th Anniversary Jazzmaster

23.     From the date of the creation of the first FENDER Products to the present, Plaintiff and its authorized retailers are and have been the sole and official source of genuine FENDER Products in the United States.





*Examples of Genuine FENDER Products Incorporating the* FENDER *Trademarks*

24.     Since at least 1950, Plaintiff has developed and marketed high-quality guitars, guitar parts, and amplifiers such as the Precision Bass, The Stratocaster, Jazzmaster, Jazz Bass, Jaguar, and the Mustang ("FENDER Products") incorporating the FENDER Trademarks. The FENDER Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the FENDER Trademarks in the industry and to consumers.

25.     The registrations for the FENDER Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b).

26.     Each of the FENDER Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. §1125(c)(1), and each has been continuously used and never abandoned. Since Plaintiff launched the FENDER Products, the Company has followed a defined strategy for

positioning its brand, marketing, and promoting the product line in the industry and to consumers, and establishing distribution channels. Plaintiff's promotional efforts for the FENDER Products include, by way of example but not limitation, the www.fender.com website, online advertising, trade magazines and social media advertising campaigns. Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the FENDER Products.

27.    The FENDER Products have become enormously popular, driven by Plaintiff's arduous quality standards and innovative trademarked designs. These designs are broadly recognized by consumers as being sourced from Plaintiff. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff and its FENDER Products.

28.    Plaintiff owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, to prepare derivative works based upon the trademarked designs, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the FENDER Trademarks as the owner of those trademarks.

## THE DEFENDANTS' UNLAWFUL CONDUCT

29.    The success of the FENDER Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

30.    Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to

receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

31.    On personal knowledge and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FENDER Products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

32.    Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

33.    Plaintiff has not licensed or authorized Defendants to use the FENDER Trademarks, and none of the Defendants are an authorized retailer of the genuine FENDER Products.

34.    On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the FENDER Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for FENDER Products. Additionally, upon

10

information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine FENDER Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which Defendants could continue to sell Counterfeit Products into this Judicial District.

35. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

36. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

37. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

11

38.     In addition, the Counterfeit Products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

40.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

41.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

42.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border

---

[2]https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited February 19, 2025).

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited February 19, 2025).

Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

43.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

44.      On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

45.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the FENDER Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Florida over the Internet.

46.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit FENDER Products into the United States, including Florida (in this Judicial District).

47.     Defendants' use of the FENDER Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

48.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the FENDER Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of

the FENDER Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

49.      Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114 *et seq.*)**

50.      Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-49 of this Complaint.

51.      This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered FENDER Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The FENDER Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the FENDER Trademarks.

52.      Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the FENDER Trademarks without Plaintiff's permission.

14



*Exemplar of Genuine Trademarked Product Sold by Plaintiff Through its Online Store*



*Exemplar of Counterfeit Product Sold by Defendants*

53.     Plaintiff is the registered owner of the FENDER Trademarks and official source of FENDER Products. The United States Registrations for the FENDER Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the FENDER Trademarks and are willfully infringing and intentionally using counterfeits of the FENDER Trademarks. Defendants' willful, intentional, and unauthorized use of the

FENDER Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

54.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

55.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

56.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known FENDER Trademarks.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a) *et seq.*)

57.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-49 of this Complaint.

58.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit FENDER products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

59.     By using the FENDER Trademarks in connection with the sale of counterfeit FENDER products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

60.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

61.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.      using the FENDER Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine FENDER Product or is not authorized by Plaintiff to be sold in connection with the FENDER Trademarks;

b.      passing off, inducing, or enabling others to sell or pass off any product as a genuine FENDER Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the FENDER Trademarks;

c.      committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.      further infringing the FENDER Trademarks and damaging Plaintiff's goodwill;

e.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademark, including the FENDER Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

f.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

g.    operating and/or hosting websites at the Defendant Domain Names that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the FENDER Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine FENDER Product or not authorized by Plaintiff to be sold in connection with the FENDER Trademarks.

2.    Entry of an Order that AliExpress, Amazon, DHgate, Ebay, Etsy, Temu, TikTok and Walmart:

a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

c.    take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

3.    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the FENDER Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

4.    In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the FENDER Trademarks.

5.    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6.    Award any and all other relief that this Court deems just and proper.

Dated:    February 25, 2025        Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Nicole Fundora*
Nicole Fundora (FL Bar No. 1010231)
100 SE 2nd Street
Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
nfundora@bsfllp.com

***Counsel for Plaintiff FENDER MUSICAL INSTRUMENTS CORPORATION***