UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-CV-20864-MOORE/Elfenbein

FENDER MUSICAL INSTRUMENTS
CORPORATION,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND
UNINCORPORATED
ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## MOTION FOR DEFAULT FINAL JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Fender Musical Instruments Corporation's

Motion for Entry of Final Default Judgment (the "Motion"), ECF No. [34]. The Honorable K.

Michael Moore referred the Motion to me "to take all necessary and proper action as required by

law and/or to issue a Report and Recommendation regarding Plaintiff's Motion for Default

Judgment." *See* ECF No. [36]. For the reasons explained below, I respectfully **RECOMMEND**

that the Motion, **ECF No. [34]**, be **GRANTED**.

## I.    BACKGROUND[1]

      This case concerns seventeen federally registered trademarks (the 'Fender Marks") that

Plaintiff Fender Musical Instruments Corporation ("Plaintiff") owns and has registered with the

---

[1] Because Plaintiff has obtained a clerk's entry of default, *see* ECF No. [29], the Court accepts as true the well-pleaded factual allegations of the Amended Complaint, *see TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1298 (S.D. Fla. 2016), but not its conclusions of law, *see Surtain v. Hamlin Terrace Found*, 789 F.3d 1239, 1245 (11th Cir. 2015).

United States Patent and Trademark Office ("USPTO").  *See* ECF No. [1] at ¶19.  The Fender

Marks are utilized in association with the manufacture, distribution, marketing, and promotion of

high-quality goods, including guitars, guitar parts, and amplifiers.  *See* ECF No. [1] at ¶24.

Plaintiff has been using the oldest of the Fender Marks since 1967 and the newest since

2022.  *See* ECF No. [1] at ¶19, ECF No. [1-1].  Plaintiff has spent significant amounts of time,

money, and other resources advertising and promoting the Fender Marks, *see* ECF No. [1] at ¶26,

and has extensively used the Fender Marks in the United States without ever abandoning them.

*See* ECF No. [1] at ¶26.  Plaintiff's promotional efforts for the Fender Marks include, but are not

limited to, "online advertising, trade magazines and social media advertising campaigns."  *See*

ECF No. [1] at ¶26. As a result, the Fender Marks have become synonymous with Plaintiff's

reputation, quality, and goodwill, and consumers and the public recognize the Fender Marks as

products directly sourced from Plaintiff.  *See* ECF No. [1] at ¶27.  The success of Plaintiff's

products bearing the Fender Marks has led to significant counterfeiting and infringing products

being introduced in the market.  *See* ECF No. [1] at ¶29.

Defendant in this case is among the counterfeiters and infringers that violate Plaintiff's

trademark rights.  *See* ECF No. [1] at ¶29.  Through an Internet-based e-commerce store operating

under the seller identity identified on Schedule A, Defendant has advertised, promoted, offered for

sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits,

infringements, reproductions, or colorable imitations of the Fender Marks.  *See* ECF No. [1] at

¶¶45, 52.  Indeed, incorporated by reference into the Complaint are screen shots of an online

shopping cart allowing these imitations of the Fender Marks from Defendant's e-commerce store

to be shipped to Florida, *see* ECF No. [1] at ¶14; ECF No. [10-1] at 67-73, and the Complaint

reveals images comparing one of the Fender Marks to the counterfeit product offered for sale on

Defendant's e-commerce store, *see* ECF No. [1] at ¶52. Importantly, Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Fender Marks.  *See* ECF No. [1] at ¶33.  In doing so, Defendant is deceiving consumers by using the Fender Marks without authorization on their websites to attract multiple search engines on the Internet that are looking for websites pertinent to consumer searches for Plaintiff's products.  *See* ECF No. [1] at ¶34.  Defendant also "use[s] other unauthorized search engine optimization ('SEO') tactics and social media spamming so that the Defendant[']s Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine" Fender products.  *See* ECF No. [1] at ¶34. Additionally, Defendant's website has images and other elements that make it extremely difficult for consumers to differentiate such sites from authorized websites.  *See* ECF No. [1] at ¶38.  Defendant also goes "to great lengths to conceal [its] identit[y] and often use[s] multiple fictitious names and addresses to register and operate [its] massive network of" e-commerce stores and "constantly create[es] new websites and online accounts on various platforms." *See* ECF No. [1] at ¶¶35-36.

Based on its investigation and review of Defendant's products, Plaintiff filed a Complaint for Damages and Injunctive Relief (the "Complaint").  *See* ECF No. [1].  The Complaint included claims for trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114 (Count I) and false designation of origin, in violation of 15 U.S.C. § 1125(a) (Count II).  *See* ECF No. [1] at 14–17.  Plaintiff filed an Ex-Parte Application for Entry of Temporary Restraining Order, including a Temporary Injunction, a Temporary Transfer of the Defendant Internet Stores, a Temporary Asset Restraint, and Expedited Discovery (the "TRO Application").  *See generally* ECF No. [10].  After finding that Plaintiff satisfied all four elements for a temporary restraining order, Judge Moore granted the TRO Application, *see* ECF No. [13], and following a Report and

Recommendation from the undersigned, *see* ECF No. [28], Judge Moore entered a preliminary injunction against Defendant, see ECF No. [30].

Also during this timeframe, Plaintiff filed an Ex-Parte Motion for Order Authorizing Alternate Service of Process on Defendant, *see* ECF No. [11], which the Court granted, *see* ECF No. [15]. Consistent with the Court's authorization, Plaintiff then served Defendant by email and website posting, *see* ECF No. [20], but Defendant did not answer or respond to the Complaint. The Clerk of the Court thereafter entered a default consistent with the Court's instructions. *See* ECF Nos. [31], [32].   On June 12, 2025, Plaintiff then filed the Motion, seeking default judgment against Defendant on all counts in the Complaint, the entry of a permanent injunction, including an order requiring that the listings and associated images infringing on Plaintiff's trademarks used by Defendant be permanently removed, and an award of statutory damages for Defendant's infringement pursuant to 15 U.S.C. § 1117(c).  *See* ECF No. [34].

## II.   LEGAL STANDARDS

### A.  Default Judgment Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55 (a).  After the clerk enters a default, the Court is authorized to enter a final default judgment if the party seeking it applies for one.  *See* Fed. R. Civ. P. 55 (b)(2); *Surtain*, 789 F.3d at 1244 ("When a defendant has failed to plead or defend, a district court may enter judgment by default.").

"A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact' as set forth in the operative complaint."  *TracFone*, 196 F. Supp. 3d at 1298 (quoting *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).   But the

defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (quotation marks omitted).  And a defendant's default does not automatically permit the Court to enter a default judgment: "Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered."  *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019); *see also Surtain*, 789 F.3d at 1245 ("Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered." (quotation marks omitted)).

The Eleventh Circuit has "interpreted the standard" for evaluating whether a sufficient basis for default judgment exists "as being akin to that necessary to survive a motion to dismiss for failure to state a claim."  *Surtain*, 789 F.3d at 1245; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").  Of course, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 678).

**B.  Trademark and False Designation of Origin Law**

   **1.  Federal Trademark Infringement (15 U.S.C. § 1114)**

"Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause

confusion, or to cause mistake, or to deceive.'" *Chanel, Inc.*, 362 F. Supp. 3d at 1262 (quoting 15 U.S.C. § 1114). "To prevail on a trademark infringement claim under 15 U.S.C. § 1114, the plaintiff must show that it owns a valid trademark, that its mark has priority, that the defendant used such mark in commerce without the plaintiff's consent, and that the defendant's use is likely to cause consumer confusion as to the source, affiliation or sponsorship of its goods or services." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1264–65 (S.D. Fla. 1999); *see also Chanel, Inc.*, 362 F. Supp. 3d at 1262 (consolidating those four elements into two: plaintiff "had prior rights to the mark at issue" and defendants "adopted a mark or name that was the same, or confusingly similar to" it "such that consumers were likely to confuse the two").

Registration of a mark with the USPTO is "prima facie evidence" of its "validity," "the registrant's ownership of" it, and "the registrant's exclusive right to use" it "in commerce" or "in connection with the goods or services specified in the registration." *See* 15 U.S.C. § 1115(a). A plaintiff's mark has priority if the plaintiff began using the mark before the defendant began using its competing mark. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (noting that plaintiff's mark had priority because it had been selling its products for five years before defendant created the competing domain names). One way a defendant can use a mark in commerce is by "establishing a website on the Internet" that contains the mark. *See id.*

"In determining the likelihood of confusion, the court must analyze the following seven factors: (1) the type of trademark; (2) the similarity of the marks; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets and purchasers; (5) the similarity of the advertising media used; (6) the defendant's intent; and (7) actual confusion." *Carnival Corp.*, 74 F. Supp. 2d at 1265. There are "four categories" of marks: generic; descriptive;

suggestive; and "fictitious, arbitrary or fanciful." *See Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1540 (11th Cir. 1985) (citation omitted). "The categories are based on the relationship between the name and the service or good it describes." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

> The Eleventh Circuit has described the difference between the categories this way:

> The demarcation between each category is more blurred than it is definite. A term which suggests the basic nature of the service is generic. The term Milk Delivery is an example of a generic service mark for a hypothetical milk delivery service. A generic term is typically incapable of achieving service mark protection because it has no distinctiveness. A descriptive term merely identifies a characteristic or quality of a service. An example of a descriptive service mark might be BarnMilk. Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning. The personal name component of a service mark such as Barney's to denote a milk delivery service is also considered not inherently distinctive and hence merely descriptive. However, if the personal name mark acquires secondary meaning, it is afforded the strength of an inherently distinctive mark. Marks which are descriptive of geographic location of the source of the service are treated in the same manner as personal name marks. A suggestive term suggests the characteristics of the service and requires an effort of the imagination by the consumer in order to be understood as descriptive of the service. Barn–Barn is an example of a suggestive term. Because a suggestive service mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable. An arbitrary or fanciful term bears no relationship to the service. Arbitrary and fanciful terms are also inherently distinctive, so they are protectable without proof of secondary meaning. Barnbarnfish is an example of an arbitrary or fanciful service mark.

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1522–23 (11th Cir. 1991) (cleaned up); *see also Frehling Enters., Inc.*, 192 F.3d at 1335 ("An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services)."); *Laite*, 756 F.2d at 1540 (noting that suggestive marks are "comparatively weak" but "will be protected without proof of secondary meaning" and that fictitious/arbitrary/fanciful marks are "generally inherently distinctive" and therefore "strong" and "afforded the widest ambit of protection").

"The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists.  Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision.  The appropriate weight to be given to each of these factors varies with the circumstances of the case." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (citations omitted).  "Of these factors, the type of mark and the evidence of actual confusion are the most important in this circuit," *Dieter*, 880 F.2d at 326, but actual confusion "is obviously not a prerequisite to a finding of likelihood of confusion, as it is one of seven factors considered in the likelihood-of-confusion determination," *Wreal, LLC*, 38 F.4th at 137.  "In reviewing the evidence, there are no set rules as to how much evidence of confusion is needed; rather, a district court must take into consideration the circumstances surrounding each particular case." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997) (quotation marks omitted).

## 2. False Designation of Origin (15 U.S.C. § 1125(a))

"Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition in interstate commerce, and forbids unfair trade practices involving infringement of trademarks, even in the absence of federal trademark registration." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (alteration adopted, quotation marks omitted). "Section 43(a) is remedial in nature and should be interpreted and applied broadly so as to effectuate its remedial purpose." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).  "The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source." *Suntree Techs.*, 693 F.3d at 1346 (citation and emphasis omitted).  "Common law and statutory trademark

infringements are merely specific aspects of unfair competition." *Planetary Motion, Inc.*, 261 F.3d at 1193–94 n.5.

"To state a claim for unfair competition and false designation of origin, a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two," *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1355–56 (S.D. Fla. 2012) (quotation marks omitted), which are the same elements required "to prevail on [a] federal claim of trademark infringement," *Suntree Techs.*, 693 F.3d at 1346. *Cf. Chanel, Inc.*, 362 F. Supp. 3d at 1262 (explaining that the "test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue"). Because the "legal standard for unfair competition under both the Lanham Act and the common law has been held to be essentially the same as the standard for trademark infringement," courts "apply the same seven-factor 'likelihood of confusion' test to claims brought under 15 U.S.C. § 1125(a) as well as infringement claims." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1284–85 (S.D. Fla. 2015). A false designation of origin claim "proscribes the behavior of passing off or palming off, which occurs when a producer misrepresents his own goods or services as someone else's." *Custom Mfg.*, 508 F.3d at 647 (quotation marks omitted).

## C. Forms of Relief Available in Trademark Cases

### 1. Permanent Injunction

A district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under

subsection (a), (c), or (d) of section 1125 of this title." *See* 15 U.S.C. § 1116(a). Indeed, injunctive relief "is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (quotation marks omitted). In "ordinary trademark infringement actions complete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks — even in cases in which more than one entity has a legal right to use the mark." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (alteration adopted, citation and quotation marks omitted).

"Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Id.* at 1208. In "trademark cases, a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm." *Chanel, Inc.*, 362 F. Supp. 3d at 1263 (alteration adopted, quotation marks omitted).

In this Circuit, courts apply a "presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim" because "infringement by its nature causes irreparable harm." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1287 (S.D. Fla. 2010) (quotation marks omitted). The same presumption applies when analyzing permanent injunctions. *Id.* at 1287 n.4; *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (explaining that the "standard for a preliminary injunction is essentially the

same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success"); 15 U.S.C. § 1116(a) (noting that a plaintiff "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction").

"[E]ven in a default judgment setting, injunctive relief is available." *Chanel, Inc.*, 362 F. Supp. 3d at 1263. In fact, a defendant's "failure to respond or otherwise appear . . . makes it difficult for" a plaintiff "to prevent further infringement absent an injunction." *Id.* If a court determines that an injunction is warranted, its "broad equity powers allow it to fashion" whatever kind of injunctive relief is "necessary to stop" a defendant's "infringing activities." *Id.* at 1264.

### 2.  Other Equitable Relief

Along with permanent injunctions, the Court's broad equity powers allow it to fashion whatever relief is necessary to stop or remedy infringing activities in a particular case. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Id.* "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Id.* (quotation marks omitted). "Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole." *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944).

In the trademark context, district courts are expressly authorized to order the transfer of domain names that are "identical or confusingly similar to" a protected mark if the person who "registers, traffics in, or uses" the domain name "has a bad faith intent to profit from that mark."

11

*See* 15 U.S.C. § 1125(d)(l)(A).  "In any civil action involving the registration, trafficking, or use of a domain name under" § 1125, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *See* 15 U.S.C. § 1125(d)(l)(C). Courts have used this authority to order the transfer of infringing domain names, in addition to issuing permanent injunctions, as a means of providing comprehensive relief from future infringement.  *See, e.g.*, *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 & n.4 (S.D. Fla. 2016) (collecting cases in which courts in this District have "ordered the transfer of domain names" when faced with similar factual scenarios).

This is particularly true when defendants "have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of" a plaintiff's rights. *See id.*  Indeed, courts may fashion equitable relief "to eliminate the means by which" defendants conduct "their unlawful activities," and ordering "the cancellation or transfer of" domain names to a plaintiff, "where they may be disabled from further use as platforms for the sale of counterfeit goods, is appropriate to achieve this end." *See id.*  Courts also have the inherent authority to order the transfer of any assets that were restrained "to assure the availability of permanent relief," such as funds that can be "used to satisfy an equitable award of profits." *Cf. Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (recognizing a court's inherent authority "to order preliminary relief, including an asset freeze" to "assure the availability of permanent relief").

### 3.  Statutory Damages

"In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages for any such use in connection with the

sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(c). Those statutory

damages can be "in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit

mark per type of goods or services sold, offered for sale, or distributed, as the court considers just,"

or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per

counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court

considers just." 15 U.S.C. § 1117(c)(1)–(2). And as with any other "money judgment in a civil

case recovered in a district court," "[i]nterest shall be allowed." 28 U.S.C. § 1961(a); *see also id.*

§ 1961(b) (explaining that interest "shall be computed daily" and "compounded annually").

Courts in this District have "defined willful infringement as when the infringer acted with

actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's

copyright." *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (quotation marks omitted). In

addition, courts "may infer that defendants willfully infringed Plaintiff['s] copyrights because of

defendants' default." *Arista Recs., Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313

(S.D. Fla. 2003). "An award of statutory damages is appropriate despite a plaintiff's inability to

provide actual damages caused by a defendant's infringement." *See besumart.com*, 240 F. Supp.

3d at 1292. "Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting

cases because evidence of a defendant's profits in such cases is almost impossible to ascertain."

*Id.* Overall, "[d]istrict courts have wide discretion in awarding statutory damages." *PetMed*

*Express, Inc.*, 336 F. Supp. 2d at 1219.

## III.   DISCUSSION

Here, Plaintiff moves for a default judgment, including a permanent injunction, statutory

damages, and other forms of equitable relief. *See* ECF No. [34]. Injunctive relief is appropriate

when Defendants have violated at least one of Plaintiff's trademark rights. See 15 U.S.C. §

1116(a); *Agad*, 911 F. Supp. at 1509–10.  As such, the Court's first step is to analyze if a final judgment on Plaintiff's trademark counterfeiting/infringement and false designation of origin claims is appropriate before assessing whether it is entitled to a permanent injunction, statutory damages, or other equitable relief.  *See* ECF No. [34].

### A.  Final Default Judgment

As the Clerk of the Court entered default against Defendant, *see* ECF No. [32], final judgment is appropriate if there is a sufficient basis in the pleadings for judgment to be entered. *Chanel, Inc.*, 362 F. Supp. at 1259; *see also Surtain*, 789 F.3d at 1245.  A sufficient basis for default judgment is satisfied when the plaintiff "[pleads] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Surtain*, 789 F.3d at 1245; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Furthermore, Plaintiff must not have pled conclusory allegations and formulaic recitations of the elements of a cause of action.  *See Twombly*, 550 U.S. at 555.

### 1.  Federal Trademark Infringement and Counterfeiting (Count I)

To succeed under § 1114, Plaintiff must show that: (1) it owns a valid trademark; (2) its mark has priority; (3) Defendant used such mark in commerce without the plaintiff's consent; and (4) Defendant's use is likely to cause consumer confusion as to the source, affiliation or sponsorship of its goods or services.  *See Carnival Corp.*, 74 F. Supp. 2d at 1265.

First, Plaintiff is the owner of the Fender Marks, which are valid trademarks. *See* ECF No. [1] at ¶ 19, ECF No. [1-1].  Plaintiff has been using the oldest of the Fender marks since 1967 and the newest since 2022.  *See* ECF No. [1] at ¶ 19, ECF No. [1-1].  Plaintiff has also used the Fender Marks for commercial purposes in the United States for an extended amount of time, causing the marks to be synonymous with Plaintiff's reputation, quality, and goodwill.  *See* ECF No. [1] at

¶¶26-27.  As a result, consumers associate the Fender Marks as products directly sourced from Plaintiff.  *See* ECF No. [1] at ¶¶26-27.  Therefore, the Court agrees with Plaintiff that it owns common-law trademark rights in the Fender Marks.  Plaintiff has also registered the Fender Marks with the USPTO.  *See* ECF No. [1] at ¶19, ECF No. [1-1].  And the Fender Marks have been used in commerce and have never been abandoned. *See* ECF No. [1] at ¶26.  Therefore, Plaintiff has statutory trademark rights too.  *See* 15 U.S.C. § 1115(a).  The Court thus agrees that Plaintiff is the owner of all rights, title, and interest in the Fender Marks.

Second, the Fender Marks have priority over the counterfeit marks Defendant has been using.  To recap, Plaintiff has been using the oldest of the Fender marks since 1967 and the newest since 2022.  *See* ECF No. [1] at ¶19, ECF No. [1-1].  In the Complaint, Plaintiff alleges that Defendant knew of Plaintiff's ownership in the Fender Marks as well as its fame and goodwill before Defendant began to counterfeit the marks.  See ECF No. [1] at ¶48.  In other words, Plaintiff was already using the Fender Marks before Defendant commenced its use of the counterfeit marks.  This alone satisfies the requirement needed to show the Fender Marks have priority.  *See PetMed Express, Inc.,* 336 F. Supp. 2d at 1218 (explaining that a plaintiff's mark has priority when the plaintiff uses the mark before the defendant began using the similar mark).

Third, Defendant has used the Fender Marks without Plaintiff's consent.  Defendant has advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits of the Fender Marks on e-commerce platforms without Plaintiff's permission.  *See* ECF No. [1] at ¶¶52-53.  This is one of the ways to use a mark in commerce.  *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1218.  Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Fender Marks, *see* ECF No. [1] at ¶33, thus establishing that Defendant used such

mark in commerce without the plaintiff's consent, *see Carnival Corp.*, 74 F. Supp. 2d at 1265. Accordingly, the Court finds that this factor has been satisfied.

That leaves the question of whether Plaintiff has established that Defendant's use is likely to cause consumer confusion.  When "counterfeit marks are involved, application of the [consumer confusion] factors may not be necessary."  *See Am. Airlines, Inc. v. Spada*, No. 23-CV-21844, 2024 WL 4472016, at *9 (S.D. Fla. Sept. 21, 2024) (citing *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1359 (S.D. Fla. 2017)).  This is because the consumer confusion factors "are more geared towards comparing two distinct, albeit similar, marks," but "application of the factors is unnecessary where use of an identical mark—that is, a counterfeit mark—is at issue."  *Id.*  A counterfeit mark "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. A counterfeit mark is inherently confusing because it is identical to a protected mark, so consumer confusion can be presumed.  *See Am. Airlines*, 2024 WL 4472016 at *9 (citing *See Casa Dimitri Corp.*, 270 F. Supp. 3d at 1359).  Indeed, courts often presume consumer confusion when the marks at issue are counterfeits.  *See Burger King Corp. v. Huynh*, No. 11-CV-22602, 2011 WL 6190163, at *4 (S.D. Fla. Dec. 5, 2011) (finding that a "labored analysis" of consumer confusion was unnecessary when the infringing mark was not merely similar to the protected mark but was one in the same with the protected mark); *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1368 (S.D. Ga. 2003), *aff'd*, 107 F. App'x 183 (11th Cir. 2004) (explaining that the defendant's "use of marks identical or substantially identical to the registered Nike trademarks was likely to cause confusion in the minds of potential buyers as to the source, affiliation or sponsorship" of the infringing products); *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1262 (S.D. Fla. 2002) ("I presume that the counterfeit items caused public confusion in the marketplace, as the counterfeit marks and

the genuine marks are substantially identical both in design and use and it is undisputed that the counterfeit marks were sold to the public."); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1099 (S.D. Cal. 2018) ("Again, the Court finds it unnecessary to analyze the likelihood of confusion test because the marks are identical.").  Here, because Defendant's products involve counterfeit items, Plaintiff satisfies the consumer confusion element.

As all four prongs of federal trademark infringement under § 1114 are satisfied, Plaintiff has stated a claim to relief that is plausible on its face.  *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41.  Accordingly, Plaintiff is entitled to final default judgment on Count I.  *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245.

### 2.  False Designation of Origin (Count II)

To succeed under § 1125(a), Plaintiff must demonstrate that Defendant used the Fender Marks in connection with goods or services in a manner likely to cause consumer confusion.  *See* 15 U.S.C. § 1125(a)(1).  Plaintiff must also show that Defendant's use of the Fender Marks is likely to mislead consumers into believing there is an affiliation, connection, or association between both parties, or that Plaintiff has sponsored or approved Defendant's goods or services. *See id*.  These requirements mirror the ones needed for a plaintiff to prevail on a federal claim of trademark infringement.  *See Suntree Techs.*, 693 F.3d at 1346; *Chanel, Inc.*, 362 F. Supp. 3d at 1262; *Fla. Int'l Univ. Bd. of Trs.*, 91 F. Supp. 3d at 1284–85.

For these reasons, the Court's findings in its analysis of Count I, *see supra* Section III.A.1, apply to Count II.  As such, the Court finds that Plaintiff has trademark rights in the Fender Marks and Defendant's unauthorized use of the marks is likely to confuse consumers.  *See Brain Pharma*, 858 F. Supp. 2d at 1355–56.  After satisfying the elements of federal false designation of origin under § 1125(a), Plaintiff has stated a claim to relief that is plausible on its face.  *See Iqbal*, 556

CASE NO. 25-CV-20864-MOORE/Elfenbein

U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41.  Accordingly, Plaintiff

is entitled to final default judgment on Count II.  *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*,

789 F.3d at 1245.

Therefore, Plaintiff has met all elements for trademark counterfeiting and infringement

(Count I) and false designation of origin (Count II).  As a result, I respectfully **RECOMMEND**

that final judgment **BE ENTERED** in Plaintiff's favor on Count I and Count II.  *See* Fed. R. Civ.

P. 55 (b)(2); *Surtain*, 789 F.3d at 1244.

### B.  Permanent Injunction

As Plaintiff is entitled to default judgment on Counts I and II, *see supra* Section III.A, the

Court must determine if a permanent injunction against Defendant is appropriate, *see* 15 U.S.C. §

1116(a).  Injunctive relief is available with default judgment, especially in trademark and unfair

competition cases, as a defendant's failure to respond or appear makes it difficult for a plaintiff to

prevent further infringement without an injunction.  *See Chanel, Inc.*, 362 F. Supp. 3d at 1263.  To

succeed on a permanent injunction claim, Plaintiff must show (1) it has sustained irreparable harm;

(2) legal remedies, including monetary damages, are insufficient to address that harm; (3) the

balance of hardship between the parties favors equitable relief; and (4) granting the injunction

would not be contrary to the public interest.  *See Angel Flight of Ga., Inc.*, 522 F.3d at 1208.

First, as Plaintiff has satisfied all elements of its trademark infringement and counterfeiting

claim, the Court presumes it has been irreparably harmed.  *See Tiramisu Int'l LLC*, 741 F. Supp.

2d at 1287 n.4.  This also means that Plaintiff has satisfied the first prong of the test, as the same

presumption applies when analyzing permanent injunctions.  *See Amoco*, 480 U.S. at 546 n.12; 15

U.S.C. § 1116(a).  Additionally, Plaintiff alleges that it is suffering, and will continue to suffer,

from irreparable harm if Defendant's infringing actions are not permanently enjoined.  *See* ECF

No. [34] at 9; ECF No. [10-1] at ¶¶31–32.  As such, the first element of the permanent injunction standard is satisfied.  *See Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1287 n.4.; *Amoco*, 480 U.S. at 546 n.12; 15 U.S.C. § 1116(a).

Second, legal remedies, including monetary damages, are insufficient to remedy Plaintiff's harm.  Plaintiff asserts it has no adequate remedy at law so long as Defendant continues to use the Fender Marks in the infringing manner it has been doing so.  *See* ECF No. 34 at 10.  Without an injunction, Plaintiff alleges it has no control over Defendant, *see id.*, as Defendant is going to great lengths to hide its identity and avoid being shut down.  *See* ECF No. [10-1] at ¶23.  Injunctive relief has historically been considered an appropriate remedy in trademark and unfair competition cases because monetary damages alone would not sufficiently redress harms resulting from ongoing infringement, satisfying the second prong of the permanent injunction test.  *See Agad*, 911 F. Supp. at 1509–10.

Third, the balance of hardship between the parties does favor equitable relief, as Defendant's actions are causing the "erosion and destruction of the goodwill associated with Plaintiff's name and associated trademarks and the destruction of the legitimate market sector in which it operates." *See* ECF No. [10-1] at ¶¶ 27–29; *Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1287.  Through Defendant's infringement, Plaintiff has faced significant hardship from loss of sales and its inability to control its reputation.  *See* ECF No. [34] at 10.  On the other hand, Defendant suffers no hardship as it never had and does not have Plaintiff's authority to use the Fender Marks. *See id*. As such, the balance of hardships weighs heavily towards Plaintiff and satisfies the third prong of the permanent injunction standard.  *See Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1288.

Fourth and finally, the public has an interest in a permanent injunction against Defendant to prevent consumer confusion caused by Defendant's infringing activities and products.  *See*

*Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1288.  Indeed, complete injunctions against infringers in ordinary trademark infringement cases are "the order of the day" because "the public deserves not to be led astray by the use of inevitably confusing marks." *Angel Flight of Georgia, Inc.*, 522 F.3d at 1209.  A permanent injunction will put an end to consumer confusion, while also protecting Plaintiff's property interest in the Fender Marks.  *See* ECF No. [34] at 11.  Hence, the Court finds that enjoining Defendant from using the Fender Marks best serves the public interest because of the likelihood of consumer confusion.  *See supra* Section III.A.1.

Because Plaintiff has met all four elements of the permanent injunction standard, I respectfully **RECOMMEND** that a permanent injunction **BE ISSUED** against Defendant prohibiting it from using the Fender Marks.  *See* 15 U.S.C. § 1116(a); *Chanel, Inc.*, 362 F. Supp. 3d at 1264 (noting that a court's broad equity powers allow it to fashion whatever kind of injunctive relief is necessary to stop a defendant's infringing activities).  Furthermore, Defendant's e-commerce stores and associated payment platforms are pivotal to Defendant's operation, and the e-commerce stores themselves are one of the ways Defendant continues to harm Plaintiff.  *See* ECF No. [1] at ¶¶31–36.  As such, the listings and associated images infringing Plaintiff's trademarks currently used by Defendant should be permanently removed.  *See* ECF No. [34] at 11.

### C.  Statutory Damages

Pursuant to 15 U.S.C. § 1117(c), Plaintiff has requested to recover statutory damages.  *See* ECF No. [34] at 1–2.  Under the federal trademark statute, a plaintiff can recover statutory damages as a remedy for a defendant's infringement, rather than actual damages and profits.  *See* 15 U.S.C. § 1117(c).  Statutory damages can range from $1,000 to $200,000 per counterfeit mark per type of good sold.  *See id*. §1117(c).  Importantly, a court can award up to $2,000,000 per mark for each type of good, if it finds the defendant's infringement was willful.  *See* 15 U.S.C. § 1117(c)(2).  A

defendant's infringement is considered willful when the defendant acts with actual knowledge or in reckless disregard of the plaintiff's rights. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219. Willful infringement can also be inferred when a defendant fails to respond to a complaint. *See Arista Recs., Inc.,* 298 F. Supp. 2d at 1313. The Court has broad discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219.

Here, Plaintiff has elected to recover statutory damages in the amount of $200,000 against Defendant. *See* ECF No. [34] at 14. This amount is well within the range permitted under § 1117(c) and this Court's discretion. *See* 15 U.S.C. §1117(c); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219. The record also shows that Defendant knowingly and intentionally copied one or more type of goods bearing the Fender Marks. *See* ECF No. [34] at 14. Additionally, Defendant failed to respond to Plaintiff's Complaint. Therefore, the Court could award up to $2,000,000 per mark for each type of good Defendant used because their infringement was willful. *See* 15 U.S.C. § 1117(c)(2); *Arista Recs., Inc.*, 298 F. Supp. 2d at 1313.

Defendant has promoted, advertised, offered for sale, or sold at least one kind of good using counterfeit trademarks that is a copy of the Fender Marks without Plaintiff's authority. *See* ECF No. [34] at 14. As such, the Court finds that Plaintiff is entitled to statutory damages in the amount of $200,000 against Defendant. This amount should be sufficient to deter Defendant and others from counterfeiting or otherwise infringing the Fender Marks, compensate Plaintiff, and punish Defendant, which are the goals of 15 U.S.C. § 1117(c). *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000.00 in statutory damages against each Defendant). Accordingly, I respectfully **RECOMMEND** that Plaintiff **BE AWARDED** $200,000 against Defendant as statutory damages.

Together with a permanent injunction and statutory damages, Plaintiff also asks the Court to

enter equitable relief consisting of "instruct[ing] any third-party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to Plaintiff in partial satisfaction of the award of damages."  *See* ECF No. [34] at 2.  Because the Court also has the inherent authority to order the transfer of any assets that were restrained to assure the availability of permanent relief, *see Levi Strauss & Co.*, 51 F.3d at 987, I further respectfully **RECOMMEND** that the Final Default Judgment **TRANSFER** all funds currently restrained or held on account for Defendant by all financial institutions to Plaintiff, up to and including the total amount of judgment, *see* Fed. R. Civ. P. 65, 15 U.S.C. § 1117; 28 U.S.C. § 1651(a).  Finally, because in any money judgment in a civil case recovered in a district court "[i]nterest shall be allowed," *see* 28 U.S.C. § 1961(a); *id.* § 1961(b), I respectfully **RECOMMEND** that Plaintiff **BE AWARDED** interest from the date of the Final Default Judgment, computed daily and compounded annually.

## IV.     CONCLUSION

Accordingly, I respectfully **RECOMMEND** that Plaintiff's Motion for Entry of Final Default Judgment, **ECF No. [34]**, be **GRANTED** as follows:

1. Final Default Judgment **BE ENTERED** in favor of Plaintiff and against Defendant as to all counts of the Amended Complaint, *see* Fed. R. Civ. P. 55 and 58;

2. Defendant, along with their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them, **BE PERMANENTLY RESTRAINED AND ENJOINED**, *see* Fed. R. Civ. P. 65, from:

   a. manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing Plaintiff's trademarks, or any confusingly similar trademarks identified in paragraphs 1 and 19 of the Complaint, ECF No. [1];

CASE NO. 25-CV-20864-MOORE/Elfenbein

b.  using the Fender Marks in connection with the sale of any unauthorized goods;

c.  using any logo, and/or layout which may be calculated to falsely advertise the services or products of the Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

d.  falsely representing themselves as being connected with Plaintiff, through sponsorship or association;

e.  engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of the Defendant are in any way endorsed by, approved by, and/or associated with Plaintiff;

f.  using any reproduction, counterfeit, copy, or colorable imitation of the Fender Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant;

g.  affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant as being those of Plaintiff or in any way endorsed by Plaintiff;

h.  otherwise unfairly competing with Plaintiff;

i.  using the Fender Marks or any confusingly similar trademarks or works on e-commerce marketplace sites, domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms which are visible to a computer user or serves to direct computer searches to e-commerce stores, websites, and/or

CASE NO. 25-CV-20864-MOORE/Elfenbein

Internet businesses registered, owned, or operated by Defendant; and

j.  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

3.  Plaintiff **BE AWARDED** the following equitable relief:

a.  Upon Plaintiff's request, the Internet marketplace website operators and/or administrators for the Internet based e-commerce stores operating under the seller identification names identified on Schedule "A" hereto (the "Defendant's Internet Stores"), including but not limited to AliExpress, Amazon, DHgate, Ebay, Etsy, Temu, TikTok and/or Walmart, shall permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Fender Marks via the e-commerce stores operating under the Defendant's Internet Stores, and any other listings and images of goods bearing counterfeits and/or infringements of the Fender Marks associated with the same sellers or linked to any other alias seller identification names or e-commerce stores being used and/or controlled by Defendant to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Fender Marks; and

b.  Upon Plaintiff's request, any Internet marketplace website operator and/or administrator who is in possession, custody, or control of Defendant's goods bearing one or more of the Fender Marks, including but not limited to AliExpress, Amazon, DHgate, Ebay, Etsy, Temu, TikTok and/or Walmart, shall permanently cease fulfillment of and sequester those goods, and surrender them to Plaintiff.

4.  Plaintiff **BE AWARDED** $200,000 against Defendant pursuant to 15 U.S.C. § 1117(c),

for which let execution issue forthwith, based upon the Court's finding that Defendant infringed at least one trademark on one type of good. The Court considered both the willfulness of each Defendant's conduct and the deterrent value of the award imposed, and the award falls within the permissible statutory range under 15 U.S.C. §1117(c).

5. All funds up to the amount of the monetary judgment currently restrained or held on account for Defendant by all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com, AliExpress.com, Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), Amazon.com, Worldpay US, Inc. ("Worldpay"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, eBay.com, Etsy.com, SIA Joom, which operates the Joom.com platform ("Joom"), Walmart.com, Wish, PayPal, Inc. ("PayPal"), Payoneer, PingPong, LianLian, OFX, and their related companies and affiliates, are to be immediately (within 5 business days of receipt of a Final Default Judgment) transferred by the previously referred to financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms and by the Defendant, to Plaintiff and/or Plaintiff's counsel in partial satisfaction of the monetary judgment entered against Defendant. All financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to Alibaba, AliExpress, Alipay, DHgate, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, Walmart, PayPal, Payoneer, PingPong, LianLian, OFX, and/or their related companies and affiliates, shall provide to Plaintiff at the time the funds are released, a breakdown reflecting the (i) total funds

restrained in this matter; (ii) total chargebacks, refunds, and/or transaction reversals deducted from Defendant's funds restrained prior to release; and (iii) total funds released to Plaintiff.

6. Plaintiff **BE AWARDED** interest from the date this Order, compounded annually pursuant to the provision of 28 U.S.C. § 1961.

7. The bond posted by Plaintiffs in the amount of $5,000.00 **BE RELEASED** by the Clerk of the Court.

8. The Court **RETAIN** jurisdiction to enforce its Final Default Judgment and Permanent Injunction.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 22, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

CASE NO. 25-CV-20864-MOORE/Elfenbein

**SCHEDULE A**

| Defendant Seller | Defendant Online Marketplace |
|---|---|
| hefeibaqianlikejiyouxiangongsi | https://www.amazon.com/sp?seller=A5YWJXIN09VNK |